IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRACE FURR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-1011-RDR |
| ) | |
| RIDGEWOOD SURGERY AND ) | |
| ENDOSCOPY CENTER, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon Defendant Joseph T. Poggi, III and Nonparty Jerry Gaston's Motion to Quash Proposed Subpoenas or for a Protective Order (ECF No. 48). Mr. Gaston has also filed an unopposed motion to intervene for the sole purpose of moving to quash and/or for a protective order (ECF No. 46). As explained in greater detail below, the court finds Mr. Gaston has standing to move to quash under Fed. R. Civ. P. 45. However, "[u]nlike Rule 45, Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to the parties or the person from whom discovery is sought."[1] The Tenth Circuit has dictated that the correct procedure for a nonparty to move for a protective order is to first seek intervention for that purpose.[2] In this case, Dr. Gaston has filed an unopposed motion to intervene, which is granted insofar as the court finds he has standing to bring his motion. As stated in more detail below, the court finds the subpoena seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and for this reason, the

---

[1] *SEC v. Dowdell*, 144 Fed. App'x 716, 722-23 (10th Cir. 2005).

[2] *Id.*

court grants the request to quash the subpoenas. Because the court finds the subpoenas should be quashed, it does not reach Drs. Poggi and Gaston's request for a protective order.

## I.     Relevant Background

Plaintiff Grace Furr has filed suit against her former employer, Defendant Nueterra Healthcare, alleging that it discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964.[3] She alleges Defendant Joseph T. Poggi, M.D. and his employer, Defendant Ridgewood Surgery and Endoscopy Center, LLC tortuously interfered with her employment contract with Nueterra.[4] Ms. Furr served as an administrator with Nueterra, a medical management company that provided medical management services to Ridgewood. Ms. Furr alleges that as the facility administrator, she fielded two sexual harassment complaints by Nueterra employees concerning Dr. Poggi.[5] She alleges that she reported the allegations to her supervisor at Nueterra, which then conducted an investigation and took certain actions with respect to Ridgewood and Dr. Poggi based on its findings. The complaint states that after the investigation, Ms. Furr spoke with her supervisor about Dr. Poggi and informed her supervisor that she felt Dr. Poggi and other doctors at Ridgewood treated her poorly because she is a woman and retaliated against her for her actions with regard to the sexual harassment complaints. She alleges that her supervisor later e-mailed her to say that he could not ensure the retaliation by Ridgewood physicians would cease and encouraged her to look for another job. The complaint states that at the next Ridgewood board meeting, the board changed her duties by asking her to

---

[3] Pet. at ¶ 23, ECF No. 1-1.

[4] *Id.* at ¶ 22.

[5] *Id.* at ¶ 12.

work weekends and adding changes that would require her to work directly with Dr. Poggi. In January 2013, Ms. Furr states she felt required to quit her job at Neuterra.

The discovery dispute before the court concerns subpoenas Ms. Furr intends to serve on five nonparty surgical facilities and hospitals where Dr. Poggi and Dr. Gaston perform surgeries. The subpoenas seek "All documents, emails, correspondence, investigation reports, witness statements regarding any allegations of sexually inappropriate conduct by Joseph Poggi, M.D. or Jerry Gaston, D.O. between January 1, 2008 and January 31, 2013."[6] Drs. Poggi and Gaston move for an order quashing the subpoenas and/or the entry of a protective order prohibiting the discovery.

## II.     Discussion

Fed. R. Civ. P. 45(d)(3)(A) provides that the court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographic limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Under Rule 45(d)(3)(B), the court may quash a subpoena if it requires "(i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe the specific occurrences in dispute and results from the expert's study that was not requested by a party."

Generally, a motion to quash a subpoena must be made by the party to whom the subpoena is directed unless the party challenging the subpoena has a "personal right or privilege with respect to the subject matter of the documents requested in the subpoena."[7] There is scant

---

[6] Notice of Intent to Issue Business Rs. Subpoena, ECF No. 49-1.

[7] *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).

case law addressing what constitutes a "personal right," but courts have generally "applied the exception to specific factual circumstances."[8]

This district has previously held a movant has a personal right with respect to his personnel file and applications for employment.[9] Similarly, the subpoenas in this case seek information about any prior complaints of harassment by the physicians—nonpublic information that itself could be found in a personnel file and is also analogous to the type of employment information typically found in a personnel file. The court finds the physicians have standing to move to quash.

Drs. Poggis and Gaston argue quashing the subpoena is appropriate under Rule 45(d)(3)(A)(iii), which requires the court to quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." They argue that the type of records the subpoenas seek are confidential and would most likely be created in conjunction with employment or employment-type records. They speculate that if the records involved patient complaints, the records would likely be a part of peer review or risk management records, which would be shielded from discovery by the peer-review privilege.

Drs. Poggi and Gaston cite Judge O'Hara's opinion in *Patel v. Snapp* for their position that the court should evaluate their privacy and confidentiality arguments by first evaluating the relevance of the requested discovery and then deciding whether there is a compelling need for the records because the information cannot be obtained elsewhere.[10] Respectfully, the movants misunderstand *Patel*. In that case, Judge O'Hara first determined whether the movants had

---

[8] *Patel v. Snapp*, No. 10-2403-JTM, 2013 WL 5876435, at *1 (D. Kan. Oct. 31, 2013).

[9] *See Beach v. City of Olathe, Kan.*, No. 99-2210-GTV, 99-2217-GTV, 2001 WL 1098032, at *2 (D. Kan. Sept. 17, 2001).

[10] Mot. to Quash Proposed Subpoenas or for Protective Order at 5, ECF No. 49.

standing by evaluating whether they had a personal right or privilege with respect to the subject matter of the documents requested in the subpoena. But just because a movant may have standing to move to quash does not mean the subpoena will be quashed under Rule 45(d)(3)(A)(iii). Indeed, *Patel* involves consideration of multiple objections to discovery, including an objection to the production of tax returns. As Judge O'Hara notes, tax returns—unlike employment records—are generally not discoverable on public policy grounds.[11] When evaluating whether to allow a party to discover tax returns, the court uses a two-pronged test, which includes first determining whether the tax returns are relevant to the subject matter of the action and if so, then determining whether there is a compelling need for the returns because the information contained within is not readily available from other sources.[12] The subpoenas at issue in this case do not involve the production of tax returns, and the two-pronged balancing test the movants apply in their brief is inappropriate here.

Rather, the party asserting an objection to discovery on the grounds that it is privileged or otherwise protected bears the burden of establishing that a privilege or protection applies.[13] Drs. Poggi and Gaston's position fails for several reasons. First, relevant employment records and similar information are routinely discoverable in civil litigation.[14] They are not *per se* protected because they may contain confidential or sensitive information. Indeed, "[i]t is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or

---

[11] *Patel*, 2013 WL 5876435, at *3.

[12] *Id.*

[13] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

[14] *See, e.g.*, *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 WL 3819974, at *4 (D. Kan. July 24, 2013) (discussing that certain relevant information contained in personnel files is routinely discoverable and citing cases).

information from discovery."[15] Any concerns about confidentiality can be addressed by making the information subject to a protective order limiting the parties' use and disclosure of this information.[16]

Drs. Poggi and Gaston's speculation that the requested materials may be protected by Kansas' peer-review or risk-management privileges also is insufficient to establish that either privilege applies. Without knowing whether responsive documents are even part of a peer-review or risk-management file or process, the court lacks necessary information to quash the subpoenas on this basis. Moreover, Drs. Poggi and Gaston fail to demonstrate they are the holders of these particular privileges or that they have standing to assert these privileges.[17] For these reasons, the court denies Drs. Poggi and Gaston's request that the court quash the subpoenas on the basis that they require disclosure of privileged or protected matters.

In applying the two-prong test used in *Patel* for discovery of tax returns, Drs. Poggi and Gaston also assert that the subpoenas seek irrelevant information. Lack of relevance is a valid reason to quash a subpoena. Although Rule 45 does not specifically provide for a relevance objection as a reason for quashing a subpoena, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) . . . ."[18] Therefore, "the court must examine whether a request contained in a subpoena . . . seeks irrelevant information under the same

---

[15] *High Point SARL v. Sprint Nextel Corp.*, 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011).

[16] *Id.*

[17] *See, e.g.,* K.S.A. 65-4915(b) (stating that the peer-review privilege "may be claimed by the legal entity creating the peer review committee or officer, or by the commissioner of insurance for any records or proceedings of the board of governors").

[18] *Martinelli v. Petland, Inc.*, Nos. 10-407-RDR, 09-529-PXH-DGC, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003)).

standards as the rules governing discovery requests served on parties."[19] The parties devote a considerable portion of their briefs to the issue of relevance. Therefore, the court will also address what it construes as a relevance objection as a reason for quashing the subpoenas.

Fed. R. Civ. P. 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." For good cause, the court may also order discovery of any matter relevant to the subject matter involved in the action.[20] Relevance is broadly construed at the discovery stage and a "request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[21] There is no presumption in the Federal Rules of Civil Procedure that a discovery request seeks relevant information.[22] Relevance, however, is often apparent on the face of the request.[23] When relevance is not apparent on the face of the request, the proponent of the discovery request must show the relevance of the requested information.[24] When a discovery request seeks facially relevant information or when the proponent of the discovery has

---

[19] *Id.* (internal quotations omitted).

[20] Fed. R. Civ. P. 26(b)(1).

[21] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).

[22] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09–2656–KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[23] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[24] *Id.* at *7 (citing *Thompson*, 2007 WL 608343, at *8 n.20).

demonstrated relevance, the objecting party bears the burden to show how the discovery request is objectionable.[25]

Because the relevance of the requested discovery is not immediately apparent, Ms. Furr bears the initial burden of demonstrating relevance. Ms. Furr makes several arguments as to why this information is relevant. First, she asserts that if Nueterra had insisted on learning about any prior complaints of sexual harassment, it could have done more to protect Ms. Furr and other employees. Ms. Furr fails to explain how this theory bears on the claims or defenses in this case. Ms. Furr has not pled that Nueterra had an independent obligation to seek these non-employee physicians' records from other surgical facilities, and this discovery does not appear to have any bearing on whether Nueterra constructively discharged Ms. Furr in retaliation for engaging in protected activity.

Ms. Furr also argues the information is relevant to the issue of constructive discharge and damages. She contends that if Ridgewood knew or had reason to know of prior misconduct by Drs. Poggi and Gaston, its decision to support these physicians is evidence of intent, and she contends that a track record of harassment would support the reasonableness of her decision not to hold a job where those violating policies would not be held accountable. The subpoenas, however, are not aimed at gathering information about what Ridgewood knew, and likewise, Ms. Furr does not contend that she knew of prior sexual harassment complaints at other surgical facilities or that this factored into the circumstances leading to her alleged constructive discharge. The court fails to see how this information is relevant for the purposes stated.

---

[25] *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 633-34 (D. Kan. 2012) ("[T]he objecting party must specifically show . . . how each discovery request is objectionable.") (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004)).

Ms. Furr also argues the records may prove relevant on the question of whether Drs. Poggi and Gaston actually harassed employees who worked at Ridgewood. Again, Ms. Furr fails to outline how this theory bears on the claims or defenses in this case. Ms. Furr does not allege that she was personally subjected to sexual harassment. A retaliation claim requires the plaintiff to show that she engaged in a protected opposition to discrimination, suffered an adverse employment action, and that a causal connection existed between the protected activity and the adverse employment action.[26] Whether the physicians actually committed the alleged sexual harassment would not bear upon whether Ms. Furr's role in reporting the incidents qualifies as a protected activity.[27]

Because the information sought in the subpoenas is not facially relevant and Ms. Furr has not demonstrated the relevance of the requested discovery, the court grants Drs. Poggi and Gaston's motion to quash. Ms. Furr shall not serve the subpoenas. Having found that the subpoenas should be quashed, the court need not consider the movants' request for a protective order prohibiting issuance of the subpoenas.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Joseph T. Poggi, III and Nonparty Jerry Gaston's Motion to Quash Proposed Subpoenas or for a Protective Order (ECF No. 48) is granted.

**IT IS FURTHER ORDERED** that the Unopposed Motion of Jerry Gaston to Intervene for a Limited Purpose (ECF No. 46) is granted.

---

[26] *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

[27] *See, e.g.*, *Renner-Wallace v. Cessna Aircraft Co.*, No. 01-1135-JAR, 2003 WL 1342939, at *7 (D. Kan. 2003) (discussing that plaintiffs' own claims of retaliation did not depend on the success of their underlying discrimination claims).

**IT IS SO ORDERED.**

Dated this 18th day of November, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
